NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

―――――――――――――――――――――――

MARIA E. GARCIDUENAS, et al., *Plaintiffs/Appellants/Cross-Appellees*,

*v.*

MATRIX NEW WORLD ENGINEERING, INC., *Defendant/Appellee/Cross-Appellant.*

―――――――――――――――――――――――

MARICOPA MOUNTAIN DOMESTIC WATER IMPROVEMENT
DISTRICT; WESTLAND RESOURCES INC., *Defendants/Appellees.*

No. 1 CA-CV 25-0212

FILED 07-23-2026

―――――――――――――――――――――――

Appeal from the Superior Court in Maricopa County
No. CV2022-050782
The Honorable Melissa Iyer Julian, Judge

**AFFIRMED**

―――――――――――――――――――――――

COUNSEL

Lindemann Law Firm, APC, Beverly Hills, CA
By Blake J. Lindemann
*Co-Counsel for Plaintiffs/Appellants/Cross-Appellees Garciduenas*

The Law Offices of William D. Black, Scottsdale
By William D. Black
*Co-Counsel for Plaintiffs/Appellants/Cross-Appellees Garciduenas*

Jones, Skelton & Hochuli P.L.C., Phoenix
By Elizabeth B.N. Garcia, William D. Holm, Mariah L. Logan
*Counsel for Defendant/Appellee/Cross-Appellant Matrix*

Beaugureau, Hancock, Stoll & Schwartz, P.C., Phoenix
By Anthony J. Hancock, Shimin Luo
*Counsel for Defendant/Appellee Maricopa Mountain*

Schmitt Schneck Even & Williams, P.C., Phoenix
By Andrew Q. Everroad
*Counsel for Defendant/Appellee Westland*

---

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Andrew M. Jacobs and Judge Brian Y. Furuya joined.

---

**M O R S E**, Judge:

**¶1**     S.G. ("Plaintiff") appeals the superior court's grants of summary judgment in this wrongful-death action arising from a workplace accident in which his father ("decedent") died. Cross-appellant Matrix New World Engineering, Inc., ("Matrix") challenges the superior court's denial of its request for sanctions against Plaintiff under A.R.S. § 12-349. For the reasons set forth below, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**     In 2017, the Maricopa Mountain Domestic Water Improvement District ("District") retained Westland Resources, Inc. ("Westland") to serve as an engineer and assist with upgrades to its water system infrastructure, including the construction of new water wells. Westland then entered a subconsultant agreement with Southwest Groundwater, a division of Matrix, for hydrogeologic consulting services for the project. In 2020, the District retained Morex Investments LLC dba Arizona Beeman Drilling ("Beeman") to drill two new wells for the project on land owned by the District.

**¶3**     Beeman employed decedent. In December 2020, while Beeman worked on drilling a new well, decedent died after becoming tangled in a rope connected to a Beeman drill rig. After the incident, the Arizona Division of Occupational Safety and Health cited Beeman for a

2

safety violation based on its failure to guard moving parts on the drill rig. Beeman, through its insurer, paid worker's compensation benefits to decedent's spouse.

**¶4**  In 2022, Plaintiff and decedent's parents (collectively "Plaintiffs") sued Matrix, Beeman, and Westland for wrongful death based on negligence, premises liability, negligent entrustment, and other claims. Plaintiffs voluntarily dismissed Beeman from their lawsuit. Plaintiffs then filed their first amended complaint, which added the District and other parties. The District moved to dismiss Plaintiff's parents on the grounds that they failed to file a timely notice of claim against the District and commence their action. The superior court granted the motion and dismissed all claims brought by Plaintiff's parents. In 2023, Plaintiff filed, with permission from the superior court, a second amended complaint, leaving the District, Matrix, and Westland (collectively "Defendants") as the only remaining defendants.

**¶5**  In April 2024, Plaintiff and Matrix had a discovery dispute over emails allegedly sent between Beeman and Matrix. Matrix eventually produced signed verifications from two of its employees stating they searched Matrix's records, could not locate the alleged emails, and had no reason to believe they were lost or destroyed. The superior court held a hearing on the discovery dispute in May 2024. At that hearing, Plaintiff's counsel stated the verifications had resolved the issue.

**¶6**  In May 2024, Defendants each moved for summary judgment under Arizona Rule of Civil Procedure ("Rule") 56, arguing that they did not owe duties for decedent's safety and did not breach any duties they may have owed. Matrix also moved for sanctions against Plaintiff under A.R.S. § 12-349. Around the same time, the parties entered into a stipulated scheduling order which delayed the disclosure of any defense expert witnesses and modified other deadlines. The stipulated order provided:

> Plaintiffs agreed to this extension subject to Defendants agreement not to utilize any expert proof in connection with the dispositive motion proceedings or otherwise object to Plaintiff's use of expert affidavits in response to the MSJ Motions, and (2) that this extension will not impact the scheduling of the pre-trial or trial in these proceedings. Defendants so agreed.

Plaintiff then filed his own motion for partial summary judgment which included declarations from two expert witnesses. Plaintiff requested

summary judgment on duty, breach, and causation, leaving only damages for the jury. Plaintiff also argued the superior court should have applied adverse inferences against Defendants based on spoliation of evidence, citing the alleged emails between Matrix and Beeman which formed the basis for his earlier discovery dispute, and a machine guard Beeman built for the drill rig after the accident. Matrix objected to Plaintiff's use of expert declarations in his summary judgment motion and moved for relief under Rule 56(d), arguing Plaintiff unfairly submitted expert declarations without Defendants having a chance to respond to them given the previous stipulated scheduling order. In July 2024, Matrix renewed its motion for sanctions against Plaintiff.

**¶7** After oral argument, the superior court granted summary judgment for Defendants. The superior court ruled that the Defendants did not owe decedent any duties. The superior court also denied Matrix's requests for sanctions. The superior court deemed Plaintiff's motion for partial summary judgment moot based on its grant of summary judgment to Defendants and denied it and all other outstanding motions.

**¶8** In January 2025, Plaintiff moved for amended or additional findings, to reconsider, or for a new trial. In February 2025, the superior court entered judgment in favor of Defendants. Plaintiff filed a notice of appeal and Matrix filed a notice of cross-appeal. The superior court then denied Plaintiff's motion.

**¶9** In March 2025, Plaintiff moved to reconsider and vacate judgment under Rules 7.1 and 60(b). The superior court responded and noted it did not have jurisdiction to decide Plaintiff's motion due to the notice of appeal. This Court then stayed this appeal and revested jurisdiction in the superior court to consider Plaintiff's motion. The superior court denied Plaintiff's motion.

**¶10** We have jurisdiction under A.R.S. §§ 12-120.21(A)(1), -2101(A)(1), (2), and 5(a).

## DISCUSSION

**¶11** We review the entry of summary judgment de novo. *Joshua Tree Health Ctr., LLC v. State*, 255 Ariz. 220, 222, ¶ 8 (App. 2023). We view the facts and all reasonable inferences in favor of the party opposing summary judgment. *Id.* "A motion for summary judgment should be granted 'if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the

proponent of the claim or defense.'" *Deutsche Bank Nat'l Tr. Co. v. Pheasant Grove LLC*, 245 Ariz. 325, 330, ¶ 15 (App. 2018) (quoting *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990)).

**¶12** "To establish a defendant's liability for a negligence claim, a plaintiff must prove: (1) a duty requiring the defendant to conform to a certain standard of care; (2) breach of that standard; (3) a causal connection between the breach and the resulting injury; and (4) actual damages." *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 563–64, ¶ 7 (2018). We review de novo whether a duty exists. *Wickham v. Hopkins*, 226 Ariz. 468, 470–71, ¶ 8 (App. 2011). A "duty is based on either special relationships recognized by the common law or relationships created by public policy." *Quiroz*, 243 Ariz. at 563, ¶ 2. "[I]n every negligence case, the plaintiff bears the burden of proving the existence of a duty." *Id.*

**¶13** We review the superior court's decision not to draw an adverse inference based on spoliation for an abuse of discretion. *See Strawberry Water Co. v. Paulsen*, 220 Ariz. 401, 409, ¶ 21 (App. 2008). "A court abuses its discretion when its ruling is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Henderson v. Henderson*, 241 Ariz. 580, 590, ¶ 31 (App. 2017) (quoting *Torres ex rel. v. N. Am. Van Lines, Inc.*, 135 Ariz. 35, 40 (App. 1982)).

## I.      Contract Validity.

**¶14** Plaintiff contends that Arizona's anti-indemnification statutes, A.R.S. §§ 34-226, 41-2586, void the safety delegation clauses in the Defendants' contracts. . Plaintiff points to Article 7 and section 9.09 in the contract between the District and Beeman, and part of section E1.03(A)(9)(b) of Westland's contract with the District. While Article 7 includes an indemnification clause, the superior court did not rely on or mention that clause in its summary judgment ruling. The clauses on which the superior court relied are not indemnity provisions but specify which parties will bear the responsibility for ensuring safety on the project. They do not establish any duty for one party to reimburse any other party for a loss related to a lapse in safety on the project. *Contra* Indemnify, Black's Law Dictionary (12th ed. 2024) (defining indemnify as "[t]o reimburse (another) for a loss suffered because of a third party's or one's own act or default; H[old] H[armless]"). The anti-indemnification statutes cited by Plaintiff do not apply to these contractual provisions and thus provide no basis to invalidate them.

## II.     Duty Based on Retained Control under the Restatement (Second) of Torts, Section 414.

¶15     Plaintiff argues Defendants owed decedent a duty under Restatement (Second) of Torts § ("Section") 414 because they retained control over the work being done on the well-drilling project. A general contractor owes a duty of care to subcontractors to provide "a reasonably safe place to work." *Lewis v. N.J. Riebe Enters., Inc.*, 170 Ariz. 384, 388 (1992). The exact scope of that duty may be determined by the amount of control retained over an independent contractor's work. *Id.*; Restatement (Second) of Torts § 414 (1965).

¶16     In *Lewis*, a worker became injured when he stepped on a piece of loose plyboard left on a roof and fell to the concrete floor below. 170 Ariz. at 387. The worker sued the general contractor on the project for failure to provide a safe workplace. *Id.* Our supreme court held the general contractor owed a duty to maintain a safe workplace and that the scope of that duty was based on the amount of control over the work retained by the general contractor. *Id.* at 388. The amount of the general contractor's retained control could be determined based on its contract and its actual exercise of control over the work. *Id.* at 390. The supreme court concluded that the general contractor in *Lewis* retained control, because its contract made it responsible for "all safety precautions" and because there was "sufficient evidence to support a jury finding that the general contractor actually controlled the roof construction on the day of the worker's accident . . . ." *Id.* at 391–93.

¶17     Comment c to Section 414 provides guidance about the amount of control necessary to establish a duty:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

Restatement (Second) of Torts § 414 cmt. c (1965). A general contractor need not control "the day-to-day details of a subcontractor's work in order to be subject to liability under § 414." *Lewis*, 170 Ariz. at 391. But a general contractor needs to do more than ensure contract specifications are met to have retained control. *See Lee v. M & H Enter., Inc.*, 237 Ariz. 172, 179, ¶ 25 (App. 2015) (finding that inspecting work and ensuring contract compliance do not constitute retained control).

¶18 The parties dispute whether any Defendant qualifies as a "general contractor" for this project. But that dispute is immaterial because none of the Defendants retained sufficient control over Beeman's work to be liable under Section 414. Though this is a question of fact, it "does not prevent a trial court from granting summary judgment . . . in favor of either a worker or a general contractor if such action is appropriate . . . ." *Lewis*, 170 Ariz. at 389.

¶19 Beeman's contract with the District makes clear that Beeman had sole control over its drilling operations. Beeman's contract provides that Beeman "shall be solely responsible for the means, methods, techniques, sequences, and procedures of construction" and that Beeman "shall be solely responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the Work." These contract provisions unequivocally establish that Beeman had sole responsibility for conducting its work on the project and ensuring the safety of its employees.

¶20 Plaintiff also argues that "Technical Specifications [which] predetermined drilling type, depth, and methods before Beeman's formal hiring" demonstrate control. We disagree. The Technical Specifications cannot serve as evidence of retained control. In *Lee*, the Court held a defendant had not retained control under Section 414 when the defendant "exercised *only* the right to inspect the construction work to see that the contract specifications are met . . . ." 237 Ariz. at 179, ¶ 25 (cleaned up). If inspecting work to ensure compliance with contract specifications does not qualify as retaining control, then the existence of the contract specifications themselves cannot qualify. Additionally, as part of the contract documents, the Technical Specifications should be read in light of Beeman's contract, which expressly assigns Beeman responsibility for directing its own work and maintaining its own safety precautions. The Technical Specifications do not establish retained control by the Defendants.

¶21 Moreover, Plaintiff offers no evidence that the parties' actual practice departed from the contract's provisions. Plaintiff argues the

Defendants controlled Beeman's work because "Matrix employees discussed drilling methods with Beeman employees, including rig repairs, drill depth, drill collar application, and other means and methods including that air rotary [drilling] would be used on [the site where decedent died]." But these practices only show that Matrix and the other Defendants worked with Beeman to track their progress and ensure Beeman met contract specifications. *See id.* at 179, ¶¶ 25–26; Restatement (Second) of Torts § 414 cmt. c (1965). Nowhere does Plaintiff point to any Defendant's actions that suggest they controlled how Beeman did its work. *See id.* While Plaintiff is not required to prove the Defendants controlled "the day-to-day details of a subcontractor's work in order to be subject to liability under § 414," *Lewis*, 170 Ariz. at 391, the actions Plaintiff does identify are not enough to establish control.

¶22 Because none of the Defendants retained control over Beeman's work, the superior court did not err in finding Defendants owed no duty to maintain a safe workplace and granting summary judgment to Defendants.

### III. Duty to Business Invitees under the Restatement (Second) of Torts, Section 343.

¶23 Plaintiff argues that the District owed decedent a duty under Section 343 because decedent was a business invitee on the District's property. He further argues that Matrix and Westland are also liable to decedent as a business invitee because they had legal and actual control of the project site. *See Dabush v. Seacret Direct LLC*, 250 Ariz. 264, 267, ¶ 11 (2021) ("Defendants only owe a duty to [Plaintiff] if they had legal control of the premises or exercised actual, physical control over it.").

¶24 Section 343 provides:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

8

(c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (1965). "Generally, an independent contractor and the contractor's employees are included in the category of business invitees for the purpose of determining the duty owed by the contractee." *Robertson v. Sixpence Inns of Am., Inc.*, 163 Ariz. 539, 544 (1990). Assuming Plaintiff is correct that Westland and Matrix are possessors of the land, all three Defendants would owe decedent a duty as a business invitee. But even assuming Defendants owed this duty, Plaintiff failed to show that the Defendants breached their duty under Section 343.

**¶25** While the possessor of land has a duty to protect invitees from dangerous conditions on its property, "this duty extends only to latent dangers which the contractor or his servants could not reasonably have discovered and of which the [possessor] knew or should have known." *E. L. Jones Const. Co. v. Noland*, 105 Ariz. 446, 455 (1970). The superior court noted in its summary judgment ruling that "Plaintiff does not argue that [decedent] was injured as a result of a concealed defect on the premises . . . ." Later, the superior court denied Plaintiff's motion for reconsideration explaining that "the summary judgment record failed to reflect facts sufficient to establish the existence of concealed defects . . . which led to the decedent's injuries." We agree with the superior court.

**¶26** Plaintiff asserts that decedent died because of an unsafe part on the drill rig that Beeman brought and installed at the premises. "[T]he common-law duty to furnish a safe place to work . . . refers to the owner's plant and not to the contractor's equipment." *Id.* (quoting 2 Shearman & Redfield on Negligence 689 (1941 ed.)). Decedent's "status as an invitee does not impose upon the [Defendants] any duty to protect him from the negligent acts of [Beeman]." *Id.* Because Plaintiff only alleges that Beeman's drill rig, and not a pre-existing condition on the property, caused decedent's death, Defendants cannot be liable to decedent as a business invitee under Section 343. Defendants had no duty to know about or warn decedent of a dangerous condition brought to the land by decedent's own employer. *Cf. German v. Mountain States Tel. & Tel. Co.*, 11 Ariz. App. 91 (1969) (finding no liability when the defendant did not retain control and "the evidence clearly shows that plaintiffs were not injured by a previously existing dangerous condition of the premises, but rather, solely by the active conduct of the independent contractor").

**¶27** Plaintiff cites *Ft. Lowell-NSS Ltd. Partnership v. Kelly* to argue Defendants are liable, but *Ft. Lowell* addresses liability under Section 422,

not Section 343. 166 Ariz. 96, 101–02 (1990). And Arizona law provides that Section 422 does not apply to the employee of an independent contractor. *Lee*, 237 Ariz. at 177, ¶¶ 16–18.

## IV. Negligent Selection under the Restatement (Second) of Torts, Section 411.

**¶28** Plaintiff argues the Defendants are liable to decedent under Section 411 for negligently selecting Beeman to be the drilling contractor. Section 411 provides:

> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor
>
> (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or
>
> (b) to perform any duty which the employer owes to third persons.

Restatement (Second) of Torts § 411 (1965).

**¶29** Plaintiff argues that *Ft. Lowell* establishes that the employee of an independent contractor may qualify as a third person. We disagree. In *Ft. Lowell*, the employee of one independent contractor received an electric shock caused by wiring negligently installed by a *different* independent contractor. *Id.* at 98. *Ft. Lowell* does not address whether a party can be liable to the employee of an independent contractor for negligently selecting that contractor.

**¶30** Plaintiff also cites *Pacheco v. Coffman*, an unpublished Arizona decision, to suggest Arizona should recognize the employees of independent contractors as third persons under Section 411. No. 1 CA-CV 23-0107, 2023 WL 7896261 (Ariz. Ct. App. Nov. 16, 2023) (mem. decision). In *Pacheco*, an aunt hired her nephew to renovate her cabin. *Id.* at *1, ¶ 2. The nephew and three laborers worked on the cabin and an accident injured one laborer. *Id.* at ¶¶ 4–6. The laborer sued, arguing aunt negligently selected nephew as her independent contractor. *Id.* at ¶ 7. The Court ultimately rejected the laborer's claims. *Id.* at *3, ¶ 21. In addressing the negligent selection claim, the Court noted that the parties disputed whether the laborer was an employee of the nephew. *Id.* at *2, ¶ 12. If the laborer was an employee of the nephew, the Court explained that the laborer's "remedy for work-related injuries [was] through the workers'

compensation statute." *Id.* This suggests that the laborer would not have had an independent claim for negligent selection as a third person.

¶31 The majority of states hold that the employee of an independent contractor is not a third person under Section 411. *See, e.*g., *Hancock v. Mayor & City Council of Baltimore*, 480 Md. 588, 611–12, 612 n.5 (2022) (collecting cases); *Camargo v. Tjaarda Dairy*, 25 Cal. 4th 1235, 1241–42 (2001) ("The overwhelming majority of the courts of other jurisdictions that have addressed the question have concluded that an employee of a contractor is *not* a third person for the purposes of section 411."); *but see Bagley v. Insight Commc'ns Co., L.P.*, 658 N.E.2d 584, 588 (Ind. 1995) (holding employees of independent contractors are third persons). Policy considerations support this approach. *See Carney v. Union Pac. R. Co.*, 77 N.E.3d 1, 18, ¶ 84 (Ill. 2016) (discussing Section 411's purpose). Plaintiff argues that *Alonzo v. Menholt* offers policy reasons to depart from this majority rule. 9 N.W.3d 148 (Minn. 2024). But *Alonzo* is inapposite because it does not address whether the employee of an independent contractor is a third party under Section 411. *Id.*; *see also Schip v. Pabst Brewing Co.*, 64 Minn. 22, 24 (1896) (declining to hold the employer of an independent contractor liable for the injury of an employee of the independent contractor).

¶32 Ultimately, Plaintiff offers no compelling reason to depart from the prevailing view that the employees of independent contractors are not third persons for purposes of determining legal duties under Section 411, and we see none. Because decedent was an employee of the allegedly negligently selected independent contractor, Defendants did not owe decedent a duty under Section 411. *Cf. Mason v. Arizona Pub. Serv. Co.*, 127 Ariz. 546, 551 (App. 1980) ("Generally, in the absence of retained control, the duties owed by a landowner to third persons are not owed to the employees of an independent contractor.").

## V.     Strict Liability under the Restatement (Second) of Torts, Section 519.

¶33 Plaintiff also argues Defendants should be held strictly liable for decedent's death. Section 519, which addresses strict liability, provides:

> (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

Restatement (Second) of Torts § 519 (1965). Plaintiff argues the Defendants are strictly liable for decedent's death because well drilling using a drill rig with an unguarded moving part is an abnormally dangerous activity. But strict liability applies to the injuries of third persons, not employees of independent contractors. *See Welker v. Kennecott Copper Co.*, 1 Ariz. App. 395, 403–04 (1965). In *Welker*, the Court held that Section 427, which imposes liability on landowners that employ independent contractors engaged in inherently dangerous work, only applied to injuries to third persons and not to employees of the contractor doing the work. *Id.* at 404. The same logic applies to the abnormally dangerous activities considered in Section 519. *See Lee v. City of Kingman*, 124 F. Supp. 3d 985, 991 (D. Ariz. 2015) ("Section 519's general strict liability standards are incorporated into Section 427 and were addressed in *Welker*."). Strict liability does not apply here.

## VI. Duty under Other Restatement Sections.

¶34 Plaintiff argues Defendants are liable under Section 413. Section 413 provides:

> One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer
>
> (a) fails to provide in the contract that the contractor shall take such precautions, or
>
> (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

Restatement (Second) of Torts § 413 (1965). But Arizona law provides that the duty in Section 413 is "not owed to employees of an independent contractor." *Welker*, 1 Ariz. App. at 404. Therefore, none of the Defendants could owe decedent a duty under this section.

¶35 Plaintiff also argues that Matrix and Westland are liable under Sections 383, 384, and 385. These Sections address the liability of

those acting on behalf of a possessor. *See* Restatement (Second) of Torts §§ 383, 384, 385 (1965). Section 385 does not apply here, because it deals with completed work, and the well remained under construction when decedent died. Restatement (Second) of Torts § 385 (1965). Sections 383 and 384 provide that those acting on behalf of a possessor have the same liability as a possessor. Restatement (Second) of Torts §§ 383, 384 (1965). Because we find no liability for any Defendant, there is no need to consider the effect of Sections 383 or 384 in this case.

## VII. Statutory Duties.

**¶36**        Plaintiff argues the Defendants owed duties to decedent under 40 U.S.C. § 3704 and 29 CFR 1926.300. We disagree.

**¶37**        40 U.S.C. § 3704(a)(1) addresses safety requirements for projects receiving certain types of federal funding. The remedies for a violation of this statute are that the federal government may cancel its contract with the offending party or withdraw financial support for the project. 40 U.S.C. § 3704(b)(2). The statute does not purport to establish any duties or to have any other effect on private tort actions. *See* 40 U.S.C. § 3704. Further, it does not create any enforceable duties for Defendants to decedent. *See Egbert v. Boule*, 596 U.S. 482, 491 (2022) (suggesting it is not the role of the courts to imply causes of action Congress has not provided).

**¶38**        29 C.F.R. § 1926.300 is a federal Occupational Safety and Health Administration ("OSHA") regulation. OSHA regulations only apply to employers. 29 C.F.R. § 1975.1. Beeman employed decedent, and therefore this regulation does not apply to the Defendants and cannot create a duty to decedent by Defendants. Plaintiff argues that "OSHA's multi-employer policies establish liability for controlling employers" and that Defendants may owe a duty to decedent as "putative employers." But no authority cited by Plaintiff advances this proposition. Defendants did not owe a duty to decedent under 29 C.F.R. § 1926.300. *See Egbert*, 596 U.S. at 491.

## VIII. Contractual, External, and Internal Duties.

**¶39**        Plaintiff asserts the superior court erred by failing to recognize that the Defendants owed decedent contractual, external, and internal duties. We disagree.

### A.    Contractual Duties.

**¶40**        Plaintiff argues that "Westland and Matrix, acting on the District's behalf, contractually undertook extensive supervisory and oversight responsibilities that created independent legal duties." While Arizona recognizes that duties may arise from contractual undertakings, *Gipson v. Kasey*, 214 Ariz. 141, 145, ¶ 18 (2007), Plaintiff does not point to any here.   Plaintiff alleges that the Defendants have duties based on contractual undertakings.   But Plaintiff cites only one specific contract provision for this argument.  Plaintiff otherwise supports this contention by citing nearly his entire statement of facts, which contains numerous contractual provisions from various contracts and citations to even more. It is unclear which provisions of which contracts between which parties establish the contractual duties Plaintiff alleges existed.

**¶41**        Regardless, Beeman's contract with the District makes clear that Beeman assumed sole responsibility for "initiating, maintaining, and supervising all safety precautions" related to its work. Plaintiff does not identify any contractual provision which contradicts this one.  Plaintiff has not demonstrated any of the Defendants owed a relevant contractual duty to decedent.

### B.    External Duties.

**¶42**        Plaintiff argues that by referencing the International Association of Drilling Contractors (IADC) in their contractual documents and technical specifications, the Defendants accepted a duty to ensure compliance with IADC's guidelines. To support this contention, Plaintiff points to Westland's final plans and specifications, which were incorporated into Beeman's contract with the District and provide that "Published Standards" may be used to resolve conflicts between contract documents. Plaintiff also points to a provision of Matrix's technical specifications, which provide that "[t]he daily driller's report forms must be International Association of Drilling Contractors (IADC) or equal approved by the CONSULTANT."  Nothing in these references to the IADC suggest that any of the Defendants intended to adopt the entirety of IADC's standards.  Even if they did, these standards would not establish a legal duty. *See Diaz v. Phoenix Lubrication Serv., Inc.*, 224 Ariz. 335, 341, ¶ 27 (App. 2010) ("The undisputed facts of the limited undertaking, rather than an alleged industry standard, must form the foundation for determining whether a duty exists.").

### C.     Internal Duties.

**¶43**     Plaintiff argues that Defendants' internal health and safety policies created duties owed to decedent.  But the "[v]iolation of a self-imposed rule does not create actionable negligence unless plaintiff (1) suffers the type of harm sought to be prevented by the rule and (2) is a member of the class of people for whose protection the rule was promulgated." *Gilbert Tuscany Lender, LLC v. Wells Fargo Bank*, 232 Ariz. 598, 603, ¶ 22 (App. 2013) (quoting *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 56 Cal. Rptr. 2d 756, 762 (1996)).  Plaintiff points to the Defendants' internal safety manuals and argues they created duties between the Defendants and the decedent. But Plaintiff fails to identify any specific provisions in any of these manuals which suggest decedent, as the employee of an independent contractor tasked with maintaining its own safety, qualified as a person these safety manuals were meant to protect.

## IX.     Spoliation Issues.

**¶44**     Plaintiff asserts that spoliation of evidence required the superior court to make an adverse inference against the Defendants. Plaintiff alleges Defendants failed to preserve a machine guard fashioned after decedent's accident to protect the moving part that killed decedent. He also alleges Matrix failed to produce emails with Beeman discussing their safety plan.  Plaintiff made these claims in his motion for partial summary judgment which the superior court deemed moot after its grant of summary judgment to Defendants.  Plaintiff was not entitled to any adverse inferences.

### A.     The Machine Guard.

**¶45**     Plaintiff argues that he is entitled to an adverse inference based on Defendants' failure to preserve a machine guard for the part that killed decedent. Plaintiff acknowledged that Beeman and not any of the Defendants owned the machine guard but asserted that Defendants had an obligation to ensure Beeman preserved it as parties to contracts with Beeman.  Only the District entered a contract with Beeman, so this argument does not apply to Westland or Matrix.  In discovery, parties must produce requested documents or tangible things in their "possession, custody, or control."  Ariz. R. Civ. P. 34(a)(1).  Plaintiff acknowledges that Beeman owned the machine guard, and while the District had a contract with Beeman, Plaintiff does not point to any specific provision of that contract, which suggests the District had the right to obtain the machine

guard on demand. As such, the District did not have the machine guard in its possession, custody, or control, and the superior court did not err.

### B. The Alleged Emails.

**¶46** Plaintiff argues he is entitled to an adverse inference based on Matrix's failure to produce emails allegedly sent between Matrix and Beeman, discussing project safety and equipment inspection forms. Plaintiff first raised the issue of undisclosed emails in a discovery dispute in April 2024. Matrix eventually produced signed verifications from two of its employees stating they searched Matrix's records, could not locate such emails, and had no reason to believe they were lost or destroyed. The superior court held a hearing on the discovery dispute in May 2024. At that hearing, Plaintiff's counsel stated he had received the verifications and they resolved the issue. Plaintiff then argued in his motion for partial summary judgment that he was entitled to an adverse inference based on the missing emails. But Plaintiff had already conceded the verifications resolved the matter. After accepting Matrix's verifications that the emails did not exist, Plaintiff is not entitled to an adverse spoliation inference.

## X. Plaintiff's Partial Motion for Summary Judgment.

**¶47** Plaintiff argues he is entitled to partial summary judgment in his favor. We disagree. The superior court held that its grant of summary judgment to Defendants mooted Plaintiff's motion for partial summary judgment. Plaintiff argues that Defendants' waived their right to oppose the expert proof in his summary judgment motion when they entered into a stipulated scheduling order that provided Defendants agreed "not to utilize any expert proof in connection with the dispositive motion proceedings . . . ." Plaintiff's expert proof addresses the breach and causation elements of negligence. But Plaintiff has failed to establish a breach of any duty Defendants owed to decedent, and the expert proof does not alter the result. Plaintiff is not entitled to partial summary judgment.

## XI. Sanctions on Cross-Appeal.

**¶48** Matrix cross-appeals the superior court's denial of its request to sanction Plaintiff. Matrix argues it is entitled to an award of attorney fees or costs under A.R.S. § 12-349. Matrix asserts that Plaintiff brought claims without substantial justification and unreasonably expanded the proceedings. We review the denial of a motion for sanctions under A.R.S. § 12-349 de novo. *See Hormel v. Maricopa County*, 224 Ariz. 454, 461, ¶ 27 (App. 2010). "Courts should not impose sanctions lightly." *Matter of Est. of Craig*, 174 Ariz. 228, 239 (App. 1992).

**¶49**         Matrix argues Plaintiff brought its claims against it without substantial justification.   While Plaintiff's claims were certainly "long shot[s]" and ultimately "lack[ed] winning merit," they were not "sufficiently devoid of rational support to render [them] groundless." *Arizona Republican Party v. Richer*, 257 Ariz. 237, 243, ¶ 15 (2024).

**¶50**         Matrix also argues Plaintiff unreasonably expanded the proceedings in superior court by filing a motion for summary judgment, attempting to preclude Matrix from relying on expert testimony in opposition to his motion for summary judgment, and arguing that Defendants spoliated evidence.   While these actions may have expanded the proceedings, Plaintiff's actions were related to advancing the core contentions of his case.   *But cf. Hohokam Res. v. Maricopa County*, 169 Ariz. 596, 606 (App. 1991) (awarding sanctions for "extensive and immaterial analysis" of an irrelevant issue).   Matrix has not sufficiently established the unreasonableness of Plaintiff's behavior.   We agree with the superior court's denial of Matrix's request for sanctions.

## XII.   Costs and Attorney Fees on Appeal.

**¶51**         Plaintiff and Defendants all request attorney fees on appeal under A.R.S. § 12-349.   Because Defendants prevailed on appeal, we decline to award attorney fees to Plaintiff.   *See Montano v. Luff*, 250 Ariz. 401, 407, ¶ 18 (App. 2020).   We decline to award attorney fees to Westland, Matrix, or the District under A.R.S. § 12-349 because we are not persuaded Plaintiff improperly expanded the proceedings on appeal and because there is insufficient evidence to establish Plaintiff failed to act in good faith.[1] *See*

---

[1]         We note that Plaintiff's counsel filed a consolidated reply brief on November 17, 2025.   That reply brief contained 34 citation errors, including 14 incorrect citations, and 20 quotations that did not appear in the cited cases, including five quotations that were not consistent with the case cited.   On December 3, 2025, Plaintiff filed an amended consolidated reply brief "to correct errors and make the Reply Brief more precise and specific."   The amended reply brief corrected many errors but still contained 14 incorrect reporter citations and 13 misquoted authorities.   Although errors remained, the amended brief did not cite nonexistent cases and the cases cited generally supported the propositions for which they were offered.   While we suspect that generative artificial intelligence may have been involved, because counsel corrected the substantive errors without requiring action by the Court or appellees, we have chosen not to take further action on our own motion.   Nevertheless, we urge Plaintiff's counsel to be more diligent in the future.

*Richer*, 257 Ariz. at 243, ¶ 15.  We award Defendants their costs on appeal as prevailing parties upon compliance with ARCAP 21.

## CONCLUSION

**¶52**  We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:  JR